UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **JAY THOMAS** | * | **CIVIL ACTION NO. 19-0493** |
| **vs.** | * | **JUDGE TERRY A. DOUGHTY** |
| **BRACCO DIAGNOSTICS INC.** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss pursuant to Rule 12(b)(6) filed by Defendant Bracco Diagnostics Inc. ("BDI"). [doc. # 5]. For reasons explained below, it is recommended that the motion be **GRANTED IN PART** and **DENIED IN PART**.

**Background**

On April 17, 2019, Plaintiff Jay Thomas filed the above-captioned lawsuit against BDI for injuries he obtained as a result of receiving intravenous injections of MultiHance, a gadolinium-based contrast agent ("GBCA") manufactured by BDI. (Compl. ¶¶ 1–3, [doc. # 1]).[1] According to Thomas, he received the injections in connection with magnetic resonance imaging ("MRI") and soon after developed Gadolinium Deposition Disease ("GDD"), a disease that occurs in patients who have received a GBCA, with symptoms consistent with the toxic effects of retained gadolinium. (*Id.* ¶¶ 13–15).

Thomas alleges that BDI knew of the toxic effects of MultiHance on patients with normal or near-normal kidney function for years but failed to warn healthcare providers and consumers

---

[1] In his opposition to BDI's motion, Thomas states he was injected on May 4, 2018. [doc. # 8 at 13].

of the risks associated with GBCAs. (*Id.* ¶¶ 20, 22–23, 25, 49). Thomas claims he would not have been administered a GBCA had either he or his healthcare provider been warned of the risks. (*Id.* ¶ 26).

In this suit, Thomas asserts the following causes of action: (1) strict liability–failure to warn; (2) negligence; (3) negligent misrepresentation; (4) negligence per se; (5) breach of express warranty; (6) breach of implied warranty; (7) fraudulent misrepresentation and concealment; and (8) civil battery. (*Id.* at 12–23).

On May 29, 2019, BDI filed the instant motion to dismiss. [doc. # 5]. BDI contends that (1) Thomas has failed to state a cause of action under the Louisiana Product Liability Act ("LPLA"), La. R.S. 9:2800.51–9:2800.60, which is the exclusive remedy for product defect claims; and (2) Thomas has not pleaded with particularly his causes of action for negligent misrepresentation and fraudulent misrepresentation and concealment under Fed. R. Civ. P. 9(b). [doc. # 5-1].

Thomas filed an opposition on June 28, 2019. [doc. # 8].[2] BDI filed a reply on July 18, 2019. [doc. # 15].

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) sanctions dismissal when a plaintiff fails "to state a claim upon which relief can be granted." A pleading states a claim for relief when it contains, *inter alia*, "a short and plain statement . . . showing that the pleader is entitled to relief."

---

[2] The Court granted Thomas' motion for an extension of time to file a response, [doc # 11]. [doc. # 14].

Fed. R. Civ. P. 8(a)(2). Circumstances constituting fraud must be stated with particularity. Fed. R. Civ. P. 9(b).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility requires more than just the "sheer possibility" that a defendant acted unlawfully, *id.*; it calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence" to support the elements of the claim. *Twombly*, 550 U.S. at 556. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555.

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations, although the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678. A court may permit a well-pleaded complaint to proceed even when "actual proof of those facts is improbable" or recovery is unlikely. *Twombly*, 550 U.S. at 556. But a court will dismiss a complaint "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

## Discussion

### I. Choice of Law

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This Court applies the choice of law rules of the forum

3

state—Louisiana—to determine which state's law governs. *PHI, Inc. v. Rolls-Royce Corp.*, No. CIV.A. 08-1406, 2010 WL 883794, at *5 (W.D. La. Mar. 9, 2010) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Louisiana's choice of law rules are codified in Book IV of the Louisiana Civil Code. Article 3545 provides:

> Delictual and quasi-delictual liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of this state: (1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

In this products liability suit, Thomas alleges that he "paid for, received intravenous MultiHance and was injured and treated for his injuries in Louisiana." (Compl. ¶ 11). Because he is a Louisiana domiciliary, (*see id.* ¶ 10), who sustained injuries in Louisiana, Louisiana law governs. To determine Louisiana law, the Court seeks authority primarily in Louisiana's codes and statutes—here, the LPLA—and secondarily in the final decisions of the Louisiana Supreme Court. *Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 246 (5th Cir. 2014).

## II. LPLA

### A. Exclusivity

Under Louisiana law, the LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products," and a "claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in" the LPLA. La. R.S. 9:2800.52.[3] A manufacturer is liable to a claimant for damage

---

[3] The LPLA defines manufacturer as "a person or entity who is in the business of manufacturing a product for placement into trade or commerce." La. R.S. 9:2800.53. Thomas

4

proximately caused by a product only if the product is unreasonably dangerous. La. R.S. 9:2800.54(A). A product is unreasonably dangerous "if and only if" it is unreasonably dangerous (1) in construction or composition; (2) in design; (3) because of inadequate warning; or (4) because it does not conform to an express warranty. La. R.S. 9:2800.54(B).

Courts routinely dismiss claims against manufacturers that do not arise under the LPLA. *See, e.g.*, *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (affirming dismissal of plaintiff's claims for negligence, fraudulent misrepresentation, breach of implied warranty, market share liability, and civil conspiracy); *Guillot v. Aventis Pasteur, Inc.*, No. CIV.A. 02-3373, 2013 WL 4508003, at *3 n.5 (E.D. La. Aug. 22, 2013) (finding the tort claim for civil battery is "not available against [the] manufacturer defendants due to the LPLA's exclusivity provision"). *King v. Bayer Pharm. Corp.*, No. CIV.A. 09-0465, 2009 WL 2135223, at *4 (W.D. La. July 13, 2009) ("Plaintiffs' claims against Defendants for strict liability, negligence and negligence per se are not viable as independent theories of recovery outside of the LPLA framework. The LPLA's exclusivity provision further precludes Plaintiffs' claim[] for . . . negligent misrepresentation." (internal citations omitted)). *Grenier v. Med. Eng'g Corp.*, 99 F. Supp. 2d 759, 763 (W.D. La. 2000) (dismissing plaintiff's claims for, *inter alia*, negligence, breach of implied warranty, fraudulent misrepresentation, and fraud by concealment).

---

alleges, and BDI does not dispute, that BDI manufactures, markets, and sells MultiHance, (*see* Compl. ¶ 3). Thus, BDI meets the definition of manufacturer.

Thomas "does not contest that any cause of action which does not arise under the LPLA is inappropriate." [doc. # 8 at 7]. Accordingly, because Thomas' negligence, negligent misrepresentation, breach of implied warranty, fraudulent misrepresentation and concealment, and civil battery claims are not cognizable under the LPLA, they must be dismissed. Further, Thomas brings his negligence per se claim pursuant federal law, for Food & Drug Administration ("FDA") and Federal Food, Drug & Cosmetic Act ("FDCA") violations. (Compl. ¶¶ 79–89 (citing 21 C.F.R. §§ 201.57, 201.80, 201.128; 21 U.S.C. §§ 331, 352). However, "Louisiana does not recognize any claim for violations of FDA [or FDCA] regulations. The only remedies available to [P]laintiff[] in this case are provided in the LPLA." *King*, 2009 WL 2135223, at *3 (quoting *Doucet v. Danek Med., Inc.*, No. CIV. A. 6:96-2439, 1999 WL 1129648, at *1 n.4 (W.D. La. June 28, 1999)). Thus, Thomas' negligence per se claim should also be dismissed. As these claims cannot be repleaded under the LPLA, they should be dismissed with prejudice.

B. Sufficiency of LPLA Allegations

In his Complaint, Thomas attempts to assert claims for failure to warn and breach of express warranty. (Compl. ¶¶ 53–56, 90–98). In his opposition, he also contends to have alleged a claim for unreasonably dangerous design. [doc. # 8 at 11–12]. BDI incorrectly argues that these claims fail because Thomas does not explicitly assert a claim under the LPLA, [*see* doc. # 5-1 at 4]. *See King*, 2009 WL 2135223, at *5 (complaint contained "the requisite factual allegations to state a claim under the LPLA" even though plaintiffs failed to correctly categorize their claims). Because failure to warn, breach of express warranty, and unreasonably dangerous design are

6

cognizable under the LPLA, the Court will determine whether Thomas has sufficiently alleged these causes of action.

To state a cause of action under the LPLA, a plaintiff must allege:

1. that the defendant is a manufacturer of the product;
2. that the claimant's damage was proximately caused by a characteristic of the product;
3. that the characteristic made the product unreasonably dangerous in one of the four ways provided in the statute; and
4. that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Jefferson*, 106 F.3d at 1251. Here, Thomas alleges (1) BDI manufactures the product at issue—MultiHance; (2) his injuries were foreseeable because studies demonstrated that the weak protective layer coating MultiHance failed to prevent gadolinium, a highly toxic heavy metal, from coming in contact with human tissue; and (3) his damage arose from a normal use of the product—intravenous injection of the product in conjunction with an MRI. (Compl. ¶¶ 2–3, 5, 16–20, 24, 27, 30–31, 127; *see generally* Compl.). To survive the motion to dismiss, Thomas must also allege that the product is unreasonably dangerous due to an inadequate warning, because it does not conform to an express warranty, or in design. *See* La. R.S. 9:2800.54.

*1. Failure to Warn*

"A claim premised on a failure to warn requires that the plaintiff prove that the device's inadequate warning rendered the device 'unreasonably dangerous.'" *Perez v. Michael Weinig, Inc.*, No. CIV.A. 304CV0448, 2005 WL 1630018, at *6 (W.D. La. July 7, 2005). Under La. R.S. 9:2800.57(A), a product is unreasonably dangerous "if, at the time the product left its

manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." Thus, to maintain a failure to warn claim, "a plaintiff must demonstrate that the product in question has a potentially damage-causing characteristic and that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002).

Thomas contends that during the years BDI manufactured and sold MultiHance, there have been "numerous case reports, studies, assessments, papers, peer-reviewed literature, and other clinical data that have described and/or demonstrated GDD in connection with the use of GBCAs." (Compl. ¶ 19). Beginning in 1988, studies demonstrated that gadolinium was breaking free of bonds in linear GBCAs, in part due to its weak protective layer. (*Id.* ¶ 31). Further, since 1991, studies indicated that gadolinium retention was occurring in people with normal renal function. (*Id.* ¶ 49). The first major study that showed deposits of gadolinium in human tissue in patients with renal failure appeared in 1998 and in patients with normal renal function in 2004. (*Id.* ¶ 32).

Thomas alleges that linear GBCAs, including MultiHance, have a potentially damaging-causing characteristic, a weak protective layer, which has caused "debilitating symptoms" in patients with normal renal function. (*Id.* ¶¶ 38, 40). He alleges BDI knew for years that MultiHance "did not have very stable bonds," "could come apart easily causing significant toxicity in humans," and posed a risk to people with normal renal function. (*Id.* ¶¶ 37, 49). However, according to Thomas, BDI failed to warn consumers and healthcare providers,

8

including Thomas' own healthcare providers, of gadolinium retention on the labels of its products. In 2012, BDI corrected its label to warn of gadolinium retention in people with kidney disease or acute kidney injury, but not in people with normal renal function. (*Id.* ¶¶ 23, 50). BDI issued a new label warning of gadolinium retention in patients with normal kidney function only in May of 2018. (*Id.* ¶ 47).

Based on these allegations, the Court can reasonably infer that BDI failed to provide an adequate warning of the risks associated with the use of MultiHance. *See Iqbal*, 556 U.S. at 678. Accordingly, Thomas has sufficiently pleaded an inadequate warning claim under the LPLA against BDI, and BDI's motion should be denied as to this claim. *See Rayford v. Karl Storz Endoscopy Am., Inc.*, No. CV 15-2835, 2016 WL 4398513, at *6 (W.D. La. June 22, 2016) (finding the allegations in plaintiff's complaint created a reasonable inference that defendants "failed to provide an adequate warning of the dangers associated with the use of their product").

*2. Breach of Express Warranty*

Under La. R.S. 9:2800.58,

> [a] product is unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue.

In his Complaint, Thomas notes that the weak protective layers of GBCAs were "not considered to be a problem as long as the contrast agent was excreted out of the body according to the claimed drug's half-life," but the "delayed elimination phase of the GBCAs," which allowed toxic gadolinium to be released into the body, was later discovered. (Compl. ¶ 33). Thomas contends that as of the date of his injections, BDI knew "MultiHance was not

9

completely eliminated from the body, even in patients with normal renal function," yet included the "specific and unequivocal" assertion in the Pharmacokinetics section of the MultiHance label that "'Gadobenate[4] ion is eliminated' from the body" (*Id.* ¶¶ 94–95). Thomas also claims that members of the medical community relied on BDI's representations in prescribing MultiHance, and he sustained damages as a result. (*Id.* ¶¶ 97–98).

On review, the undersigned finds that while not particularly fulsome, these allegations are sufficient to support a breach of express warranty claim. *See Rayford*, 2016 WL 4398513, at *7 (noting that *Twombly* "does not require the plaintiff to set forth such precise, detailed allegations with respect to the breach of express warranty claim," but merely requires enough "to raise a right to relief above the speculative level"). Accordingly, BDI's motion should be denied as to Thomas' LPLA express warranty claim.

*3. Unreasonably Dangerous Design*

To maintain a design defect claim, a plaintiff must demonstrate "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage" and "[t]he likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design." La. R.S. 9:2800.56.

In his response to BDI's motion, Thomas claims he pleaded in his Complaint "that an alternative design for MultiHance existed and was capable of preventing Plaintiff's damages" to

---

[4] The generic name of MultiHance is "gadobenate dimeglumine." *See* https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/021357s016s017,021358s015s016lbl.pdf#page=34.

support a claim under the LPLA for an unreasonably dangerous design. [doc. # 8 at 11–12 (citing Compl. ¶¶ 30–33, 47(b))]. However, Thomas points to portions of his Complaint that describe research into GBCAs, not alternative designs for MultiHance. Thomas does not state a cause of action for an unreasonably dangerous design; the only reference to an alternative design is the statement that BDI "failed to disclose the fact that there were safer alternatives," (Compl. ¶ 23), which alone is insufficient to support a design defect claim.

Thomas requests, in the alternative, leave to amend his Complaint to state an additional cause of action for unreasonably dangerous design. [doc. # 8 at 12]. However, he has not included a proposed pleading in accordance with L.R. 7.6. Thus, this request is not properly before the Court.

### 3. Medical Evidence

BDI also contends that Thomas has not pleaded facts sufficient to support a claim under the LPLA in part because there is a "lack of acceptance in the general medical community for any condition called 'gadolinium deposition disease.'" [doc. # 5-1 at 14]. In response, Thomas points to "studies that highlight the toxic effects of gadolinium retention." [*See* doc. # 8 at 15–17].

At this stage in the proceedings, the Court must only determine whether Thomas' claims meet the minimal threshold of plausibility. Under this standard, the undersigned finds that Thomas has sufficiently pleaded that BDI's product is unreasonably dangerous because of inadequate warning and/or because it does not conform to an express warranty and this proximately caused his injury. BDI's argument touches on the merits of Thomas' claims and is premature at this stage of the proceedings. Whether Thomas will ultimately be able to offer

11

sufficient proof to support his claims is more appropriate in the context of a motion for summary judgment or a trial on the merits.

## Conclusion[5]

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant's motion to dismiss [doc. # 5] be **GRANTED IN PART** and **DENIED IN PART, as follows:**

**IT IS RECOMMENDED** that Plaintiff's negligence, negligent misrepresentation, negligence per se, breach of implied warranty, fraudulent misrepresentation and concealment, and civil battery claims be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, in the absence of an amendment addressing the deficiencies in the claim as currently alleged within the objection period for this report and recommendation, that Plaintiff's defective design claim also be **DISMISSED WITH PREJUDICE.**

In all other respects, **IT IS RECOMMENDED** that Defendant's motion to dismiss be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific written

---

[5] Because the undersigned recommends dismissal of Thomas' negligent misrepresentation and fraudulent misrepresentation and concealment claims as barred by the LPLA, the Court need not address BDI's argument that Thomas failed to plead these claims with particularity pursuant to Fed. R. Civ. P. 9(b). [*See* doc. # 5-1 at 5–13].

objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before making a final ruling.

**Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, shall bar an aggrieved party, except on grounds of plain error, from attacking on appeal the unobjected-to factual findings and legal conclusions accepted by the District Judge.**

In Chambers, Monroe, Louisiana, this 23rd day of July 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

13